Terrence Kay
OSB#814375
Terrence Kay, P.C.
3155 River Road S, Suite 150
Salem, OR 97302-9836
Telephone: 503/588-1944
Fax: 503/588-1946
Email: Terrence@kaylawfirm.com


<u>Attorney for Plaintiff</u>


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WAYNE McFARLIN<br><br>        Plaintiff,<br><br>   v.<br><br>EDWARD GORMLEY, an individual; CITY OF McMINNVILLE, a Municipal Corporation; CITY COUNTY INSURANCE SERVICES TRUST; ROD BROWN, an individual; PUBLIC SAFETY LIABILITY MANAGEMENT INC., an Oregon corporation; WALDO FARNHAM<br><br>        Defendants. | Case No. 3:06-CV-1594-HU<br><br>**PLAINTIFF MEMORANDUM OPPOSING DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S MOTION FOR SUMMARY JUDGMENT** |


<u>**Introduction**</u>

This action arises out of the fraud, misrepresentation and concealment of material facts which were required to be disclosed to Plaintiff as police chief which deceived Plaintiff into signing a resignation letter he reasonably believed was authorized and demanded by City Council in a meeting with the Mayor, Council President and City Manager. Due process rights,

Page 1 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

expressly provided for under City employee policies for a right to written notice and a right to respond and be heard, were denied Plaintiff although his employment termination was being contemplated. Plaintiff relied on the truth of what he reasonably believed public officials told him, that his resignation was required because a police union vote was set to occur when in fact it was not. The material misrepresentations and concealment of material facts, complaints and actions against Plaintiff, which he had a right to receive, caused Plaintiff to sign a resignation letter demanded of him and sign a Separation and Release Agreement. The Release Agreement was obtained through fraud and concealment through fraudulent misrepresentations and concealments, and that Release Agreement does not expressly release claims for "fraud, nondisclosure and concealment" and should therefore be rescinded. As Plaintiff explains in his Affidavit and the incorporated exhibits, if he were honestly, openly and fairly informed with the truth, and if the concealed material facts, written complaints and accusations against him were disclosed to him, he would never have signed the resignation letter demanded from him and never signed the Separation and Release Agreement.

## Material Facts

Plaintiff relies on his Concise Statement of Material Facts, and his Affidavit, the Declarations, and the incorporated exhibits and deposition excerpts therein.

## Standard of Review

Summary judgment is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However here, summary judgment is inappropriate since material factual issues remain and exist for trial. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 116 S.Ct. 1261 (1996). A genuine issue of material fact remains and exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

Page 2 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

H:\McFARLIN\MemoOppCity101807.1sn.doc

party." *State of California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003). There are not only genuine issues but undisputed facts that false representations were made to McFarlin and numerous concealment of material facts from him occurred.

For these motions for summary judgment, the court must view the evidence in the light most favorable to Plaintiff as the non-moving party and must draw all reasonable inferences in Plaintiff's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). In this case the determination of credibility, the weighing of the evidence, and the drawing of legitimate inferences from the facts are functions of a jury, rather than functions of a Judge for a ruling on summary judgment. *State of California*, 319 F.3d at 1166. With respect, the Court's role is not to weigh the evidence, but merely to determine whether a genuine issue remains and exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The moving parties have the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although Defendants have not done this, even if Defendants had met this initial burden, the Plaintiff has presented facts which establish genuine issues of material facts for trial. *Id.* at 323-324. Here, taking the record as a whole, the Plaintiff's evidence would well allow a rational jury to find for Plaintiff. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Taylor v. List*, 880 F.2d at 1045 (1989).

Even if different ultimate inferences can be reached, summary judgment is not appropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981). Since credibility is at issue, summary judgment is not appropriate, as credibility is appropriately resolved only after an evidentiary hearing or full trial. *SEC v. Koracorp Indus.*, 575 F.2d 692, 699 (9th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 348, 58 L.Ed.2d 343 (1978). Furthermore, for a claim for negligence, summary judgment is not ordinarily appropriate because any questions of

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

negligence must typically be resolved by the finder of fact, *see Flying Diamond Corp. v. Pennaluna & Co.*, 586 F.2d 707, 713 (9th Cir.1978), and by implication the finder of fact should typically resolve other questions of liability raised in these Motions.

### Argument in Response to Defendants Gormley and City of McMinnville

1.  Plaintiff's Claims are Not Barred by the Settlement and Release Agreement.

The Separation and Release Agreement (Ex. 101) do not expressly release "fraud, concealment or nondisclosure" or any expressly stated fraud or rescission claim. As such, rescission is appropriate and the evidence establishes genuine issues as to material false statements made to Plaintiff, including material nondisclosures, Plaintiff's lack of knowledge about the truth and right to rely on the representations of public officials. Plaintiff relied on the false statements and material nondisclosures or concealment of material facts to him, which are a basis for rescission of the Separation Agreement and for Plaintiff's fraud claim for damages. The evidence before the Court establishes genuine issues on each of the elements for a claim of fraud or rescission, on which genuine issues exist for trial.

The elements of the cause of action for fraud are:

(1) A representation;
(2) Its falsity;
(3) Its materiality;
(4) The speaker's knowledge of the representation's falsity or ignorance of its truth;
(5) Intent that the representation be acted on in a manner reasonably contemplated;
(6) The hearer's ignorance of the falsity of the representation;
(7) The hearer's reliance on its truth;
(8) The hearer's right to rely on the representation; and
(9) Damage.

*Musgrave v. Lucas*, 193 Or. 401, 410, 238 P.2d 780 (1951); *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976). Although there are nine separate elements to a claim for fraud, some of the elements, such as the right to rely, are legal conclusions. *See U.S. National Bank v. Fought*, 291 Or. 201, 222, 630 P.2d 337 (1981); *Briscoe v. Pittman*, 268 Or. 604, 610, 522 P.2d 886 (1974).

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

The representations and concealed facts made to the plaintiff were material. *See Zeleny v. Karnosh*, 224 Or. 419, 424, 356 P.2d 426 (1960). The materiality of the expressed and concealed representations, or the appearance of truth based on concealed facts, is evidence from the context of the demand for his resignation and to sign a release – both of which were done as a result of the material misrepresentations and concealments. The materiality of representations hinges on whether it would affect the conduct of Plaintiff as a reasonable person during a transaction with another person. *Milliken v. Green*, 283 Or. 283, 285, 583 P.2d 548 (1978).

It is not necessary, however, to prove that the defendant intended to defraud the plaintiff. Rather, the requisite intent is found if a defendant misrepresented a material fact for the purpose of misleading the plaintiff or with the knowledge or reckless disregard that the plaintiff was being misled. *U.S. National Bank v. Fought*, 291 Or. 201, 630 P.2d 337 (1981). It also is not even necessary that a defendant have an improper motive.

The purpose of the remedy of rescission and restitution is to restore the parties as nearly as possible to their positions before the transaction. *Bodenhamer v. Patterson*, 278 Or. 367, 378 (1977). Plaintiff seeks to rescind the Release Agreement and resignation, neither of which he would ever have signed if he knew the truth. Rescission involves equitable principles of justice and fairness and a weighing of the relative responsibilities of the parties. *Combs v. Loebner*, 315 Or. 444, 450, 846 P.2d 401 (1993). Here, public officials with an obligation for truth misrepresented material facts to Plaintiff, concealed material facts from him and deceived Plaintiff into a reasonable belief that his resignation was demanded by City Council under the threat of the worse alternative of being fired. Rescission of a contract is variously defined as the annulment, abrogation, cancellation, unmaking, or destruction of the contract. Black's Law Dictionary 1174 (5th ed 1979); *Share v. Williams*, 204 Or. 664, 675, 277 P.2d 775, 285 P2d 523 (1955). Remedies of rescission and restitution are available when there is a defect in the formation of the contract as here. Since Defendants made a false representation of a material

Page 5 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's
         Motion for Summary Judgment
H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

fact (actually many, particularly through concealment), made with or without scienter, Plaintiff is entitled to rescission. *Wilson v. Zimmerman/Soundarama*, 261 Or. 528, 529 n. 1 (1972)(false representation of nature of and profit from franchise). Since Plaintiff was induced to enter into a contract by fraud, he may rescind the contract and be restored to the position he was in before the contract was entered into. *Amort v. Tupper*, 204 Or. 279, 285 (1955).

Although Plaintiff did not know all grounds for rescission, he notified the City of his intent to resign, short of his intent to rescind shortly before filing claims, offered to make restitution and only learned about material misrepresentations and fraudulent concealments after engaging in discovery by obtaining documents and deposition testimony. This presents any question as to when rescission was demanded "depends on when the rescinding party became reasonably certain of the misrepresentation and whether it thereafter continued to threat the contract as viable for any considerable length of time." *Gearhart v. Goehner*, 74 Or.App. 95, 101 (1985). Plaintiff was not required to rescind with only a bare suspicion of grounds for rescission and with no opportunity to learn the truth through the exercise of reasonable diligence which included obtaining concealed documents and testimony that could only obtained after litigation began. *Hampton v. Sabin*, 49 Or.App. 1041, 1052-1053 (1980). Regardless, delay alone is not a waiver of a right to rescind. *McDonald v. Shore,* 285 Or. 151, 157-158 (1979). Plaintiff's right to rescind is sufficient and timely as long as he acts within a reasonable time, as Plaintiff did under this factual setting of material concealment. *Egeter v. West and North Properties*, 92 Or.App. 118, 123 (1988).

Plaintiff's notice of intent to rescind as stated in his pleading was clear and unambiguous. *Stovall v. Publishers Paper Co.*, 284 Or. 53, 57 (1978). Plaintiff has offered as part of rescission, to return the severance pay received under the Separation Agreement in satisfying his request for rescission.

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944   Fax: 503/588-1946
Email: terrence@kaylawfirm.com

The Court has the equitable power upon granting rescission to require a return of the severance pay in conjunction with Plaintiff's damages sought at trial. *Bollenback v. Continental Casualty Co.*, 243 Or. 498, 503 (1966).

A release agreement obtained on a basis of fraud or here, by inducing Plaintiff to enter the release agreement by inequitable conduct, is sufficient to grant a remedy of rescission. This is noted in *Payne v. Payne*, 215 Or. 412, 415-416, 335 P.2d 606 (1959):

> "We of course recognize the rule that the remedy of rescission is open to a party who has been induced to enter into a settlement agreement by inequitable conduct of the other party. *Beaman v. DeShazor, Jr.*, 197 Or. 669, 675, 255 P.2d 157; *Taylor v. Taylor*, 154 Or. 442, 445, 60 P.2d 942; *Feves v. Feves*, 198 Or. 151, 159, 254 P.2d 694."

The Release Agreement in this case, Exhibit 101, does not expressly release claims for "fraud, nondisclosure, concealment or misrepresentation ..." by anyone in any capacity. Therefore, there was no contractual release of those stated claims and the Court should take evidence of whether this Release Agreement was itself induced by fraud. This is illustrated by the analysis in *Lindgren v. Berg*, 307 Or. 659, 664-665, 772 P.2d 1336, 1338-1339 (1989):

> "The Court of Appeals also found that there was no evidence in the record of any other possible fraud, nondisclosure, or misrepresentation by Berg to induce plaintiffs to execute the release. 89 Or.App. at 520, 749 P.2d 1212. <u>We allowed review to consider whether the release plaintiffs signed bars them from litigating whether the release itself was induced by Berg's fraud. We hold that it does.</u>

> "Plaintiffs contend that Berg acted as a LHV joint venturer or as an agent for LHV in the purchase of the Mall and, therefore, had a fiduciary duty to disclose to LHV his secret profit. <u>They argue that his nondisclosure was fraud which induced them to sign the release.</u> For purposes of deciding whether Berg was entitled to a directed verdict, we must resolve all factual issues in plaintiffs' favor.

> "<u>The release plaintiffs signed provides that the parties release each other from any claims they 'ever had or now has or later may have arising out of or in any way related to * * * Hillsboro Mall Joint Ventures * * * [for] fraud, nondisclosure, [or] misrepresentation * * * in any capacity whatsoever.' If that language means anything, it means that the parties acknowledge that there could be claims for fraud, nondisclosure, or misrepresentation of which the parties might be unaware and that any such claims were to be covered by the release.</u> Berg argues that this specific language within the broadly worded release establishes that plaintiffs could not have reasonably relied on his nondisclosure in releasing him." (underlining added)

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

Not only does the Release Agreement in this case not expressly release any claims for "fraud, nondisclosure, concealment or misrepresentation" by anyone in any capacity, but Plaintiff did not have an attorney, was not advised to have an attorney, the Agreement was not negotiated by parties represented by separate lawyers to allocate the risks (factors related to authorities cited by Defendants), and as such with the missing express language about fraud there are genuine issues for trial on rescission of the Agreement as further noted in *Lindgren v. Berg*, 307 Or. 659, 665-666, 772 P.2d 1336, 1339-1340 (1989):

> "A release is a contract in which one or more parties agrees to abandon a claim or right. *See Glickman v. Weston*, 140 Or. 117, 123, 11 P.2d 281, 12 P.2d 1005 (1932). Certainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts. <u>Parties to a contract, particularly parties who, as here, are represented by lawyers in negotiating and drafting the contract, should be allowed to allocate the actual risks of the contract as they see fit. The likelihood of a misunderstanding between parties is greatly reduced where each party is represented by a lawyer</u>.

> "Applying the law to the facts in this case, the record shows that <u>each of the parties received independent</u> legal advice with regard to their rights and to the advisability of entering into the settlement agreement and release. <u>Their lawyers participated in negotiating and drafting the agreement and release</u>. The parties agreed to terminate their extensive business relationships by plaintiffs' purchase of the other venturers' interests. They acknowledged that their releases would 'finally and forever' resolve the controversy between them. The record shows that Paul Lindgren and Berg were involved in other litigation at the time this release was executed. The agreement and release, which are clear and unambiguous on their face, record the terms of exchange as negotiated by the parties. [FN5] <u>The broadly worded release expressly encompasses claims arising from 'fraud, nondisclosure, [or] misrepresentation,'</u> all transactions related to the Mall, and all relationships between plaintiffs and Berg.

>> FN5. Plaintiffs rely on testimony of Paul Lindgren that they understood the language about 'fraud, nondisclosure [or] misrepresentation' was included in the release due to concerns of possible third party claims against the joint ventures. The record does not support an inference that Berg represented to plaintiffs that the release was restricted to third party claims. In interpreting a contract, Oregon courts look to the parties' objective manifestations rather than to their secret intentions or understandings. *Kabil Developments Corp. v. Mignot*, 279 Or. 151, 156-57, 566 P.2d 505 (1977).

> "<u>By its plain language, the release contemplates that a party might have a claim, including an unknown claim, against another party for 'fraud, nondisclosure, [or] misrepresentation.'</u> Plaintiffs' argument that they had a right to rely on Berg to disclose his secret profit before they could release him from all claims for 'nondisclosure' is self-

Page 8 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

contradictory. Plaintiffs claim, in effect, that although they signed a release in which they expressly released Berg from all claims involving nondisclosure, the release was voidable if Berg had, in fact, failed to disclose something to them. The release precludes the result plaintiffs seek.

"It covers claims of which plaintiffs might not have been aware, even claims for undisclosed fraud. The active participation of plaintiffs' lawyer in negotiating and drafting the agreement and release and reviewing them with plaintiffs before plaintiffs signed them, undercuts plaintiffs' argument that Berg fraudulently induced the release. We decline to hold, as plaintiffs urge, that a party who is represented by a lawyer in a commercial transaction may never release another party from claims for undisclosed fraud.

"We hold that the release plaintiffs signed bars them from litigating whether the release itself was induced by Berg's fraud. We agree with the Court of Appeals that the trial court erred in denying Berg's motion for a directed verdict on all of plaintiffs' claims." (underlining added)

In this case, Plaintiff did not understand he had been lied to, the facts were concealed and his rights to notice under due process of the City's personnel policies to disclosure of complaints were undisputedly withheld from him. There are genuine issues for trial that Plaintiff's resignation and signing of the Release Agreement were specifically the product of fraud in the inducement, or unconscionable overreaching or fraud. This is particularly true since Plaintiff was not told to seek counsel and was relying on the City Attorney to insure the agreement was proper. Indeed it could be concluded that if the City Attorney were aware of actual fraud, that was a further disclosure which should have been made, at least to obtain independent counsel, to avoid the perpetuation of a fraud. The evidence shows there were misrepresentations, material concealments, and even the Council President acknowledged this information about McFarlin should have been provided to him. As McFarlin explained, he never would have signed a resignation or release but for being induced by the fraud. This is also referred to in Pioneer *Resources, LLC v. D.R. Johnson Lumber Co.*, 187 Or.App. 341, 358-360, 68 P.3d 233, 243-244 (2003):

"Under Oregon law, fraud or inequitable conduct with respect to a transaction that is the subject of a release does not bar enforcement of a release, so long as the release was not itself the product of fraud in the inducement. *Ristau v. Wescold, Inc.*, 318 Or. 383, 868 P.2d 1331 (1994).

Page 9 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment
H:\McFARLIN\MemoOppCity101807.1sn.doc

\* \* \* \*

"Thus, in *Ristau*, the court necessarily rejected plaintiff's contention in this case that fraud in the inducement of the underlying transaction renders a contemporaneously executed release agreement unenforceable. Rather, <u>so long as the release agreement was not itself the product of unconscionable overreaching or fraud, [FN13 omitted] the dispositive inquiry is whether the scope of the release is so broad as to unambiguously encompass, and preclude, plaintiff's claims pertaining to the underlying substantive transaction--here,</u> the Amended Sales Agreement." (underlining added)

Although release agreements are favored by the law to allow informed negotiated fair resolutions of disputes, as noted above, release agreements may be voided if obtained by misrepresentation or unconscionable conduct, as stated in *Graves v. Tulleners*, 205 Or.App. 267, 278-279, 134 P.3d 990, 997 (2006):

"Release agreements are favored under the law because '[c]ertainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts.' *Lindgren v. Berg*, 307 Or. 659, 665, 772 P.2d 1336 (1989). <u>Accordingly, . . . release agreements may be voided if obtained by misrepresentation or unconscionable conduct.</u>"

2. <u>Gormley Is a Proper Party to Plaintiff's State Law Tort Claims</u>

Defendant Gormley (or for other Defendants claiming they are not proper parties to state law tort claims) asserts that all his acts were done in the course and scope of duties as the City's Mayor or for the City itself. The admissible facts present a genuine issue as to whether Gormley or any other Defendant claiming they are not a proper party, was in fact acting in the course and scope of duties under the Oregon Tort Claims Act "OTCA." A Defendant's conduct must fall within the course and scope to have that insulation. The conduct of Gormley and Brown pose genuine factual issues. As to Gormley, it is at best a fact question as to whether the fraud he perpetrated was or could fall within the scope of his duties. Gormley's own guilty state of mind may be evidenced as falling outside his duties when he denied demanding McFarlin's resignation in his deposition, and falsely stating all he was interested in was McFarlin's welfare and not harming his chances in being selected Chief of Police in Salem. It was not within Gormley's scope of duties to misrepresent facts to Plaintiff in seeking his resignation and concealing

Page 10 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944   Fax: 503/588-1946
Email: terrence@kaylawfirm.com

material facts which McFarlin was entitled to receive. There are fact questions as to Gormley concealing public records at his plumbing office which should have been provided to the City, the City Manger and City Councilors. There are fact issues as to whether Gormley's scope of duties included the false and defamatory statements he made to Councilor Springer in furtherance of the "plan" testified to by Brown regarding termination of McFarlin's employment. Gormley even testified he had no authority to fire or terminate McFarlin or any other employee's employment by the City. There is even evidence from the City's Risk Manager, Rod Brown, that it would take a decision of the Council to simply authorize the request, let alone a demand, for McFarlin's resignation.

Simply asserting Gormley was acting at all times in the course and scope of his duties as the Mayor does not make it so. The predicate "acting within the scope" of his duties is a genuine issue.

Further, and this also relates to Plaintiff's interference with contractual relationship claim, Gormley is an individual person apart from the City as a public body. As such, Gormley could, and facts demonstrate he did, intentionally interfere with Plaintiff's contractual employment relationship with the City by misrepresentations, concealment and arguably false testimony in an attempt to hide his guilty state of mind and knowledge he was acting beyond the scope of his duties regarding the demand for McFarlin's resignation. There is further evidence Gormley acted individually and not within his duties, or at least genuine issues exist on that subject, since Gormley kept written complaints about McFarlin at his private office, did not provide those to the City and collaborated in meetings and communications with others about McFarlin's termination well prior to the meeting where McFarlin's resignation was fraudulently induced. *Exhibit 2* even attests to a conclusion stated by Gormley in September 2005 that McFarlin's tenure as Chief should be ended, a conclusion Gormley denied in his testimony as further evidence he was acting independently. A jury could well conclude Gormley's acts were

Page 11 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

in part outside the scope of his duties as a mere voting member of Council in orchestrating and obtaining the fraudulent resignation and Release Agreement from McFarlin because Gormley knew precisely he could not have obtained a resignation by himself. A jury could also find that if McFarlin knew the truth and received the concealed facts and complaints about him, he would have contested through a due process hearing before the City. Gormley acted in part outside the time and space limits of his duties. He has not established he was motivated solely to serve the City, and he certainly has not shown his fraudulent acts were of a kind of duty he was authorized to conduct as Mayor.

In order to be liable for a claim for intentional interference with a contract, the person interfering must be a third party to that contract. *McGanty v. Staudenraus*, 321 Or. 532, 537, 901 P.2d 841 (1995)(citing *Wampler v. Palmerton*, 250 Or. 65, 74-76, 439 P.2d 601 (1968); *Sakelaris v. Mayfair Realty, Inc.*, 284 Or. 581, 588, 588 P.2d 23 (1978); and *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 625-626, 733 P.2d 430 (1987)). Whether Gormley or Brown as a third party to that contract is determined by the doctrine of *respondeat superior*. *McGanty v. Staudenraus*, 321 Or 532, 538, 901 P2d 841. Under the doctrine, "an employer is liable for an employee's torts when the employee acts within the scope of employment." *McGanty, supra* (quoting *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988)). As set forth in *Chesterman, supra,* and *McGanty, supra,* 321 Or at 539, n.3, an employee only acts within the scope of employment if:

(1) the employee's act "occurred substantially within the time and space limits authorized by the employment";

(2) the employee "was motivated, at least partially, by a purpose to serve the employer,"; and

(3) the employee's act was "of a kind which the employee was hired to perform."

A managing officer of a corporation or by analogy a municipal officer, may be subject to liability for intentional interference just like any other corporate employee if that officer acts

Page 12 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

without any purpose to serve the employer and with improper motives or purposes. *Giordano v. Aerolift, Inc.*, 109 Or.App. 122, 125-26, 818 P.2d 950 (1991). Under this analysis, a corporate officer acts with an improper purpose when that officer's sole purposes were "not to benefit the corporation's interest, but were instead self-serving or vindictive" and were "not intended to serve the principal." *RMS Technology, Inc. v. Stenbock*, 113 Or.App. 344, 347, 832 P.2d 1260 (1992). McFarlin has stated facts from which a jury could infer and conclude Gormley's acts were self-serving or even vindictive, and that the entire fraudulent inducement of McFarlin's resignation could not be intended to serve the City as the principal because a public officer could not serve the City by conducting fraud contrary to law and the City ethics policy requiring officials to be honest and trustworthy.

To defeat a defendant's motion for summary judgment, "plaintiff need not establish that defendant was solely motivated to serve himself; rather, plaintiff need only produce evidence from which a reasonable juror could so find." *Kaelon v. USF Reddaway, Inc.*, 180 Or.App. 89, 100, 42 P.3d 344 (2002).

### 3. Plaintiff's State Law Tort Claims are Not Barred by Plaintiff's Failure to Plead Notice

An unopposed Motion to plead notice as to Defendants Gormley and City has been filed, with the consent of these Defendants, to allege the Notice that was given and the claims that were filed in compliance with OTCA. Not only did Plaintiff give written notice, but filed claims, in compliance with the OTCA.

### 4. Defendants are Not Entitled to Summary Judgment on Plaintiff's Due Process Claim

Contrary to the Defendants' position, the City personnel policies (Ex. 15) require notice when termination is being contemplated. That contemplation of termination began with Gormley in September 2005, or there are facts to that effect, and was referred to by the City Risk Manager Brown as a "plan," and a purpose of the meeting with McFarlin, Gormley, Olson and Taylor was to obtain McFarlin's employment termination through a demand for his resignation,

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944   Fax: 503/588-1946
Email: terrence@kaylawfirm.com

which are genuine issues of fact. Taylor even admits when McFarlin's request for a later departure time was rejected, an employment action under the handbook could arise. Taylor also admits there was no notice given. It is fraudulent and would be inequitable and unconscionable, for Plaintiff's fraudulently induced resignation to be a bar to due process, when the planned termination or resignation effort was an adverse action, and when material written complaints were on file with the City (although hidden by Gormley) calling for McFarlin's termination. The evidence shows McFarlin was entitled to these demands for termination. The unauthorized demand in the meeting that "we need" your resignation creates questions of fact as to whether due process was then required <u>before</u> the alleged voluntarily resignation.

Contrary to Defendants' Memorandum, there is no proof that Plaintiff was fully aware of how due process worked, particularly in the face of the fraudulent inducement for his demanded resignation, Plaintiff's reasonable reliance of the truth of what he was being told by public officials, and the absence of concealed material facts. Plaintiff would not otherwise have given up his right to due process, notice, a right to respond, and a right to counsel and to be heard on the allegations against him. Even the authority cited by Defendant refers to a "voluntary" resignation, which is significantly contrary to a fraudulently induced resignation. At best for Defendants, there are fact questions as to when due process rights were implicated and at worst the Court can find due process rights were implicated, and Plaintiff was denied those rights.

5. <u>Plaintiff's Section 1983 Claim against the City Should Not be Dismissed</u>

Plaintiff has a valid section 1983 claim for his distinct interests in his property rights for employment, his liberty interests involving his good name, reputation, honor and integrity and his right to due process. Each of these were violated and summary judgment is not appropriate.

To state a due process claim, the plaintiff must complain of a deliberate decision of a government official. *Davidson v. Cannon*, 474 US 344, 106 S Ct 668, 88 L Ed2d 677 (1986). The Court acknowledges that 1983 "contains no state-of-mind requirement independent of that

Page 14 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's
    Motion for Summary Judgment
H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 US 327, 330, 106 S Ct 662, 88 L Ed2d 662 (1986).

### 5.1. Property Rights in Employment

No person shall be deprived of liberty or property without due process of law under the Fifth and Fourteenth amendments. These amendments provide minimum employment protection for certain public employees. The due process clauses of these amendments protect the liberty and property interests of employees who are affected by the adverse actions of their government supervisors and give rise to procedural protections when those rights are violated. McFarlin had specific rights under the City's employee policies, which were violated and, therefore, he could not have been constitutionally terminated without compliance.

> "An employee who has no job tenure rights 'may be constitutionally terminated with no prior notice or hearing' <u>unless</u> a statute, <u>rule</u> or contract confers a 'property interest.' *Machunze v. Chemeketa Community College*, 106 Or App 707, 715, 810 P2d 406 (1991)(quoting *Trivoli v. Mult. Co. Rural Fire Protection*, 74 Or.App. 550, 554, 703 P.2d 285 (1985)). (underlining added)

McFarlin had constitutional rights to due process under the City personnel policies for written notice, a right to counsel, a right to respond and a right to an independent hearing which the City states "must be taken to ensure due process" under Policy 6.5-6.7 (Ex. 15).

In *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994), the court stated that the threshold requirement to substantive or procedural due process is a showing of liberty or property interest protected by the Constitution. The protected property interest is present when the person has a reasonable expectation of entitlement to employment.

### 5.2. The Liberty Interest

McFarlin's liberty interests are specially evident based on the nature of an employee's liberty interest as described in *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S. Ct. 507, 27 L. Ed.2d 515 (1971) "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are

Page 15 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's
        Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

essential." *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972) (making clear that this concept applies to public employees).

There are facts from which a fact finder could conclude that adverse action was taken against McFarlin and the nature of the action affects his or her good name, reputation, honor, or integrity, such as a dismissal based on charges of dishonesty, criminal behavior or sexual misconduct. There may be liability, based on the facts before the Court, for injuring McFarlin's constitutionally protected interest unless an adequate hearing is provided. As the facts demonstrate regarding defamation about McFarlin (Gormley's false statements to Springer, false statements about McFarlin in the undisclosed complaints), and deprivation of such a liberty interest gives rise to his 1983 claim as an analog to his common-law tort claim of defamation.

The elements McFarlin's liberty claim, whether a tenured or nontenured employee are the same: termination, defamatory charges, defamation connected to the discharge, falsity of the charges, no meaningful pretermination hearing despite a request for one, and a tangible loss of other employment opportunities as a result of disclosure by the public employer. *See Johnson v. Martin*, 943 F.2d 15 (7th Cir. 1991); *Elam v. Williams*, 753 F. Supp. 1530 (D. Kan. 1990), *aff'd*, 953 F2d 1391 (10th Cir. 1992). The Ninth Circuit in *Gillette v. Delmore*, 886 F.2d 1194, 1197 (C.A.9 (Or.), 1989), has reduced these elements to the following three-part test:

1) the terminated employee must establish that the conduct at issue was entitled to constitutional protection, *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977);

2) the employee must prove that the constitutionally protected conduct was a substantial or motivating factor behind the termination, *see Mt. Healthy*, 429 U.S. 274 at 285-287, 97 S.Ct. at 575-576; and

3) once the terminated employee has established the first two elements, the employer must prove that it would have made the same decision to terminate even if the employee had not engaged in the protected conduct, *see Allen v. Scribner*, 812 F.2d 426, 433-36 (9th Cir.1987), *amended*, 828 F.2d 1445 (9th Cir.1987).

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**

*Attorney at Law*

3155 River Road S., Suite 150 - Salem, OR 97302

Telephone: 503/588-1944  Fax: 503/588-1946

Email: terrence@kaylawfirm.com

As to the first two parts, there are facts before the Court from which these conclusions could be drawn if not established based on the facts before the Court. These are issues for the fact finder. As to the third part of the test, there is no evidence the City Council then or now would have made a decision, let alone the fiction of an actual decision to demand McFarlin's resignation or the threat of termination, or to deprive him notice of due process and a right to respond. The false statements and material concealment of material facts, and the untrue nature of statements accompanying McFarlin's discharge, reduction of employment opportunities, or injury to reputation gives rise to his damage action. *See Churchwell v. United States*, 545 F.2d 59, 62 (8th Cir. 1976); *Velger v. Cawley*, 525 F.2d 334, 336-337 (2d Cir. 1975), *rev'd on other grounds sub nom. Codd v. Velger*, 429 U.S. 624, 97 S. Ct. 882, 51 L. Ed.2d 92 (1977); *United States v. Briggs*, 514 F.2d 794, 798-799 (5th Cir. 1975); *Rolles v. Civil Service Commission*, 512 F.2d 1319, 1325-1326 (D.C. Cir. 1975).

The extent of Plaintiff's damages and injury is a jury question. See *Brady v. Gebbie*, 859 F.2d 1543, 1557-1558 (9th Cir. 1988), *cert. denied*, 109 S. Ct. 1577 (1989).

### 5.3. Due Process Requirements

The Fourteenth Amendment provides that no person shall be deprived of liberty or property without due process of law. The foundation of due process is an opportunity to be heard at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed.2d 62 (1965); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed.2d 18 (1976). McFarlin had certain due process protections which attached before discharge, and more extensive procedures must be afforded after a liberty or property deprivation has occurred if not provided beforehand. These matters are to be determined on a case-by-case basis, to determine what process is due. The three-part test of *Mathews v. Eldridge, supra*, applies, which balances the private interest affected, the risk of an erroneous deprivation of the interest through the procedures used, and the cost and administrative burden additional

Page 17 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's
Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

procedures would entail. *Mathews v. Eldridge, supra*, 424 U.S. at 335. When the hearing must be held and what procedural protection must be given at the hearing is determined on a case-by-case basis. *Brady v. Gebbie*, 859 F.2d 1543, 1554 (9th Cir. 1988), cert. denied, 109 S. Ct. 1577 (1989). Under the facts of this case McFarlin was entitled to the due process protection set forth by the City and under law, and was clearly deprived of all those rights as well as being deceived into a resignation and purported release of claims.

Defendant contends "there is no evidence that any of the circumstances under which plaintiff resigned" (Gormley Memo, p. 14) were somehow related to a practice or custom involving the City's standard operating procedure. However, even if this were the sole legal standard, there is evidence from McFarlin about the practice or manner of the City being directed by Gormley, evidence that Gormley viewed <u>himself</u> as the City (rather than a mere voting member) declaring under oath "I am the City" and President Council Olson noting the manner in which Gormley conducted City action. A fact finder could also conclude the manner in which McFarlin was induced to resign without Council approval reflected in acknowledgment by Olson and Taylor of the practice or custom of the City allowing Gormley to carry out decisions of his own (such as the fraudulent obtained resignation of McFarlin) by acting without advance approval as required for the City as a public body. There is evidence from which a fact finder, and all reasonable inferences, could be drawn to conclude the City had such a practice or custom giving rise to this claim.

### 6. Gormley is Not Entitled to Qualified Immunity

There is evidence from which a fact finder could conclude Gormley violated clearly established constitutional rights of due process for McFarlin, which fraudulent representations and concealment in violation of law and City policies would establish. Certainly a reasonable official would understand he violates rights through official misconduct, false statements, concealment of material facts, misrepresentation of a union vote and the other nondisclosures

Page 18 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

during the course of conduct demonstrated by the facts. Gormley reveals his guilty state of mind and knowledge of his misconduct in denying during his deposition that he even requested the resignation, refused a further time for McFarlin to remain employed and was only concerned about McFarlin's welfare. These are factual issues.

       7.  <u>Defendants are Not Entitled to Summary Judgment on the Fraud Claims</u>

       Defendants argue only two reasons against the fraud claim. First, Defendants argue the release extended to all claims, however there was no express inclusion of fraud, nondisclosure or concealment. Plaintiff relies on the facts before the Court and the legal argument set forth above in Section 1 as if fully set forth. The second reason, not well supported by any means, is the contention there is "no evidence that Gormley falsely represented any material facts with the intent to induce Plaintiff to resign." (Def. Memo, p. 16). The facts are clearly to the contrary and present factual issues based on the testimony from McFarlin, Olson and Taylor. Gormley creates an issue over his credibility in denying what he said at the meeting seeking resignation and evidences a guilty state of mind about his intent. A fact finder could conclude in Gormley's testimony is inconsistent with the other three men present at the resignation meeting. The Defendants are incorrect arguing the withholding of information regarding complaints Gormley received did not induce Plaintiff to resign. McFarlin has put facts before the Court that if he had received the concealed complaints asking for his termination, Exhibits 2, 3, 4 and 18, which Olson even testified he should have received, McFarlin would not have resigned or signed a release agreement, and would insist on his due process rights to protect his good name, reputation and position. McFarlin could reasonably and justifiably rely on what he was being told as truthful by these public officials. Any question about reasonableness is to be viewed under the circumstances and conduct, on which summary judgment is not appropriate. Even highly skilled individuals can be defrauded and the skill, career advancement and knowledge of Plaintiff does not itself deprive him of a right to have a fact finder to conclude he was defrauded.

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

8.    As a Matter of Law, Gormley can be Held Liable for Interference with Plaintiff's Contractual Relationship with the City

Plaintiff incorporates the arguments and authorities under Section 2 above.    There is evidence from which a fact finder could conclude that Gormley was not acting in all aspects in his capacity as Mayor and therefore independent and interfering with McFarlin's contractual employment relationship.  A standard was referred to in *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 621, 733 P.2d 430, 433 (1987):

> "In order to make out a claim for intentional interference with a contract plaintiff must show that Scott acted intentionally. *See Top Service Body Shop, Inc. v. Allstate Ins. Co., supra; Straube v. Larson, supra.* This intent standard is somewhat flexible:
>
>> " * * * [E]ven if [a defendant] does not act for the purpose of interfering or does not desire it but knows that the interference is substantially certain to occur from his action and is a necessary consequence thereof, his interference is intentional as contemplated by the rule.  Restatement (Second) of the Law of Torts § 766, comments (h) and (j)."

Defamation by Gormley [and Defendant Farnham] may include "defamation, or disparaging falsehood" as stated in *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 622, 733 P.2d 430, 434 (1987):

> "Proof of an interference claim also requires that the interference either be in pursuit of an improper or wrongful motive or involve the use of an improper or wrongful means. *Top Service Body Shop v. Allstate Ins. Co., supra*, 283 Or. at 205, 582 P.2d 1365; *Straube v. Larson, supra*, 287 Or. at 361, 600 P.2d 371 (plaintiff must show that defendant's conduct did not serve any legitimate purpose).  These motives or means may be defined as improper by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession. *Top Service Body Shop v. Allstate Ins. Co., supra*, 283 Or. at 209-10, 582 P.2d 1365 (footnote omitted).  <u>They include such things as "violence, threats or other intimidation, * * * defamation, or disparaging falsehood." *Id.* at 210 n. 11, 582 P.2d 1365.</u>  However, it is unnecessary in making out an interference claim to prove all the elements of another tort. *Id.*" (Underlining added)

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

9. Defendants are Not Entitled to Judgment as a Matter of Law as to Plaintiff's Conspiracy Claims

The Oregon Supreme Court has stated the elements of for a civil conspiracy. *Bonds v. Landers*, 279 Or. 169, 174-175, 566 P.2d 513 (1977)(suit brought to collect balance due on note where one defendant alleged plaintiff and co-defendant had conspired to defraud her by selling her a 25-percent interest in a corporation); *see also Bliss v. Southern Pacific Co.*, 212 Or. 634, 321 P.2d 324 (1958)(action for damages sustained as the result of an unlawful conspiracy to bring about the wrongful termination of a lease in a commercial setting). The Court in *Bonds* stated:

> "* * * In general, to constitute a civil conspiracy there must be: (1) Two or more persons * * *; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof * * * *" (quoting 15A C.J.S. 599 Conspiracy s 1(2)).

Citing the *Bliss* decision, the court went on to say that a civil conspiracy is not an independent tort, in the absence of a statute or unusual circumstances. *Bonds, at 174.* The court in *Bliss* stated that the primary purpose of a conspiracy must be to cause injury to another. *Bliss, at 641, citing Heitkemper v.* Central *Labor Council*, 99 Or. 1, 25, 192 P. 765 (1921)(quoting with approval from 12 C.J. 584, Conspiracy § 103, "So long as the object of the combination is to further its own fair interest or advantage, and not the injury of another, its members are not liable for any injury which is merely incidental.").

A fact finder could reasonably conclude that two or more of the Defendants alleged to have conspired and had an object to wrongfully and fraudulently obtain the resignation of McFarlin on which there was a meeting of minds as to how that would be obtained, resulting in the meeting demanding his resignation. Defendants Gormley, Brown and Farnham could be found to share that objective and the course of action for that resignation. Olson testified that the meeting was for the resignation, it was demanded and Olson or Taylor did nothing to correct

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

anything Gormley said or any non-disclosures was done by them. There is evidence Brown knew of this "plan" beforehand, and that Farnham asked for the termination or resignation, discussed it with Gormley and gave the defamatory complaint, Exhibit 12, all as part of the plan. Brown's efforts to assist Farnham, refer Farnham's number, bring union President Scales to Gormley and participate in the meeting the week before the resignation was demanded are all evidence of the objective being pursued and a meeting of minds on that. There are one or more unlawful overt acts in carrying the plan out through fraud, concealment, violation of City employee due process policies, and employee ethics standards and ultimately the overt act of McFarlin's resignation being demanded, the culmination of the plan which achieved the purpose of terminating McFarlin's employment.

10.  Plaintiff's Claim for Wrongful Discharge is Not Barred as a Matter of Law

Defendants note wrongful discharge can occur for a "violation of public policy" which would not otherwise be adequately remedied. Ironically, the collection of Defendants' Motions, if granted by the court, would leave the very gap for the violations of public policy including due process and fraud, as to McFarlin. Even under Defendants' authorities, there are fact questions.

11.  Defendants are Not Entitled to Summary Judgment on the "Negligence" Claims

Even under Defendants' argument, Plaintiff incurred personal emotional injuries, damage to his property rights as an employee and his reputation. This is more than pure economic harm, although negligence alleged against Defendants would satisfy the elements for a claim of negligence, which is generally defined as "conduct falling below the standard established for the protection of others, or one's self, against unreasonable risk of harm." *Woolston v. Wells*, 297 Or. 548, 557, 687 P.2d 144 (1984). A person may be held liable for his or her negligent conduct or omission only when the conduct or omission is a substantial factor in causing foreseeable injuries to another. The elements necessary to state a claim for common-law negligence follow:

(1) A "foreseeable risk of harm";

Page 22 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's Motion for Summary Judgment

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

(2) The "risk is to an interest of a kind that the law protects against negligent invasion";

(3) The conduct was unreasonable in light of the risk;

(4) The "conduct was a cause of [the] harm"; and

(5) The plaintiff was a member of the class of persons and the plaintiff's injury was within the "general type of potential incidents and injuries that made defendant's conduct negligent."

*Solberg v. Johnson*, 306 Or. 484, 490-491, 760 P.2d 867 (1988).

12. <u>Defendant City is Not Entitled to Summary Judgment on Statutory Wage Claim</u>

If Plaintiff's rescission claim is granted, his employment was not properly ended and his wages would arguably continue and not have been paid under ORS 652.150, which states in part:

(4) Subsections (2) and (3)(b) of this section do not apply when:

(a) The employer has violated ORS 652.140 or 652.145 one or more times in the year before the employee's employment ceased; or

(b) The employer terminated one or more other employees on the same date that the employee's employment ceased.

(5) The employer may avoid liability for the penalty described in this section by showing financial inability to pay the wages or compensation at the time the wages or compensation accrued.

13. <u>Defendants are Not Entitled to Summary Judgment on Plaintiff's Breach of Contract Claim</u>

Plaintiff's breach of contract claim would flow from rescission of the release agreement and resignation, and the breach of his contract of employment. In the event of rescission, those are contract issues for a fact finder.

14. <u>Defendants are Not Entitled to Summary Judgment on Plaintiff's Defamation Claim</u>

The evidence clearly shows defamatory statements were made by Gormley to Springer (and as to Farnham statements to Gormley and the City) which were defamatory. Springer was told false statements that clearly impute unfitness of McFarlin to perform his duties as Chief, or are false words that would prejudice McFarlin in his profession or trade, a standard cited by Defendants. A fact finder could conclude these statements attack specific characteristics of a

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

Chief of Police as to his fitness to be a chief law enforcement officer or even work in law enforcement. The false statements by Gormley and the false statements by Farnham are actionable in themselves and are otherwise actionable based on evidence of special damages suffered by Plaintiff through the loss of his employment as Chief. There is evidence from which a fact finder could conclude Gormley's defamatory statements deterred Springer from acting to protect McFarlin's interests.

Even under Defendants' assertion that Gormley was only acting in the protected capacity of Mayor with absolute privilege, there are fact issues as to whether Gormley was so acting. Plaintiff incorporates the section on Gormley as a proper party from above. There are facts from which a jury could conclude Gormley was acting outside the scope of his duties, and further knew he was since Gormley even denies the defamatory statements Gormley made to Springer. Gormley may not invoke the shroud of Mayor to protect himself when there is evidence he intentionally defamed McFarlin, consistent with evidence Gormley intentionally defrauded Plaintiff and then testified in his deposition he did not defraud, did not ask for the resignation, and acted only with McFarlin's interests in mind. A jury could utterly disbelieve Gormley, finding he has no credibility based on persuasive substantial testimony contrary to Gormley's about what actually occurred, and if Gormley truly only cared about McFarlin's welfare in the resignation meeting, why did Gormley deny McFarlin's request to remain employed through the Salem selection process?

There is evidence of "actual malice" which a jury could conclude based on the numerous and harsh defamatory statements by Gormley (and those as to unfitness by McFarlin as untrustworthy). A jury could conclude Gormley and Farnham both spoke with the knowledge their defamatory statements were false, or with reckless disregard of whether their statements were false, because they never inquired of McFarlin or others about the defamatory statements they made. In the context of the Police Chief being defamed as possibly having a drug problem,

Page 24 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's
    Motion for Summary Judgment

H:\McFARLIN\MemoOppCity101807.1sn.doc

a personality defect, being untrustworthy, unstable and of having lunged at or harassed a City employee, a fact finder could conclude those statements were made with knowledge the statements were false or with reckless disregard of whether one or more of the statements were false.

Dated this 12 day of November, 2007.

Terrence Kay, P.C., OSB #814375
Attorney for Plaintiff

H:\McFARLIN\MemoOppCity101807.1sn.doc

**TERRENCE KAY, P.C.**
*Attorney at Law*
3155 River Road S., Suite 150 - Salem, OR 97302
Telephone: 503/588-1944  Fax: 503/588-1946
Email: terrence@kaylawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of November, 2007, I served the foregoing PLAINTIFF MEMORANDUM OPPOSING DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S MOTION FOR SUMMARY JUDGMENT on the following parties:

Karen O'Kasey
Hoffman Hart & Wagner LLP
1000 SW Broadway, Suite 2000
Portland, OR 97205
*Fax: (503) 222-2301*
*Of Attorneys for Defendants Gormley and City of McMinnville*

Mr. Robert S. Wagner
Miller & Wagner LLP
2210 NW Flanders Street
Portland, OR 97201
*Fax: (503) 299-6106*
*Of Attorneys for Defendants Brown, CCIST, and PSLM*

Walter Sweek
Cosgrave Vergeer Kester LLP
805 SW Broadway 8th Floor
Portland, OR 97205
*Fax: (503) 323-9019*
*Of Attorneys for Defendant Farnham*

by electronic means through the Court's Case Management/Electronic Case File system.

Dated this 12th day of November, 2007.

Terrence Kay, P.C., OSB #814375
Attorney for Plaintiff

Page 26 – Plaintiff Memorandum Opposing Defendants Gormley and City of McMinnville's
Motion for Summary Judgment

G:\1-WP\McFARLIN\MemoOppCity101807.1sn.doc