Karen O'Kasey, OSB No. 87069
HOFFMAN, HART & WAGNER, LLP
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone:	(503) 222-4499
Facsimile:	(503) 222-2301
Email:	kok@hhw.com

<u>Of Attorneys for Defendants Gormley
and City of McMinnville</u>

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| WAYNE MCFARLIN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:06-CV-1594-HU |
| | ) | |
| v. | ) | DEFENDANTS GORMLEY AND |
| | ) | CITY OF MCMINNVILLE'S |
| EDWARD GORMLEY, an individual; CITY OF MCMINNVILLE, a Municipal Corporation; CITY COUNTY INSURANCE SERVICES TRUST; ROD BROWN, an individual; PUBLIC SAFETY LIABILITY MANAGEMENT INC., an Oregon corporation; WALDO FARNHAM, | ) ) ) ) ) ) ) ) | REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| Defendants. | ) | |

**1. The Release Agreement Signed By Plaintiff is Valid, Enforceable, and Bars All of Plaintiff's Claims.**

The threshold issue for the court to decide is whether the full and final release signed by the plaintiff bars all the claims he now brings. In response to defendants' motion, plaintiff argues that the release is unenforceable because (1) it did not expressly release fraud claims; and/or (2) the release agreement itself was obtained by fraud. The first assertion is incorrect as a matter of law; the second assertion is not supported by any admissible factual evidence, and is contrary to plaintiff's own admissions.

Page 1 - DEFENDANTS GORMLEY AND CITY OF
MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

## A. The Release Language Encompasses Fraud Claims.

As a matter of law, a release agreement does not have to explicitly reference the term "fraud" in order to bar recovery for any such claim arising contemporaneously to the agreement. *Ristau v. Wescold*, 318 Or. 383, 389, 868 P.2d 1331 (1994)(court declined to hold that an unambiguous release agreement must include a specific reference to fraud claims arising contemporaneously with the release agreement in order to bar recovery; citing *Glickman v. Weston*, 140 Or. 117, 125, 11 P.2d 281 (1932), which held that a general release from all claims and demands is sufficient to bar all claims, unless a specific claim is excepted in the release).

The release agreement signed by plaintiff was a release "*from any and all claims, known or unknown*" arising out of plaintiff's employment with the City and plaintiff's resignation from employment (Defendants' Concise Stmt. ¶11, Ex. 101). The release further provided that it was "intended by the parties to be a full and complete release of *all possible claims*, and is to be construed by a court accordingly" (emphasis added, Defendants' Concise Stmt. ¶ 11, Ex. 101, Section 4).

The release also specifically provided that plaintiff "represents and acknowledges that in executing this Agreement, Employee *does not rely and has not relied upon any representation or statement not set forth herein* made by the City, its officers, agents or employees with regard to the subject matter, basis or effect of this Agreement." (emphasis added, Defendants' Concise Statement, ¶ 11, Ex. 101, Section 7). The release also provided that plaintiff "REPRESENTS AND AGREES THAT EMPLOYEE FULLY UNDERSTANDS EMPLOYEE'S RIGHT TO DISCUSS ALL ASPECTS OF THIS AGREEMENT WITH WHOMEVER EMPLOYEE DESIRES, THAT EMPLOYEE HAS EITHER DISCUSSED THIS AGREEMENT WITH WHOMEVER EMPLOYEE DESIRES OR CHOSEN NOT TO DISCUSS THIS AGREEMENT" (Defendants' Concise Stmt.¶ 11, Ex. 101, Section 11).

A release agreement is a contract, subject to construction and interpretation like any other contract. *Walker v. Woodworth*, 160 Or. App. 636, 645, 981 P.2d 1282 (1999); *Nixon v. Cascade*

Page 2 - DEFENDANTS GORMLEY AND CITY OF
MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

*Health Services*, 205 Or. App. 232, 238, 134 P.2d 1027 (2006). If the terms of the contract are unambiguous, then the construction of the contract is a question of law. *Id.* Whether the terms of a contract are ambiguous is also a question of law. *Ziebert v. Sun Valley Lumber, Inc.*, 198 Or. App. 162, 168, 107 P.3d 668 (2005).

There is nothing ambiguous about the terms of the release. The release states in plain language that it was the intent of the parties to release "all possible claims" and is to be "construed by the court accordingly." The phrase "all possible claims" should be interpreted to mean what it says–*all possible claims*, regardless of what claims those might be. *Garrison v. Bally Total Fitness Holding Corp.*, 2006 WL 3354475 (D. Or. 2006, Haggerty, Chief J.)(General release of "any tort" claim construed to mean release of "any tort" claim, regardless of basis of claim).

Plaintiff does not argue that there is any ambiguity in the agreement, creating a question of fact for a jury about the interpretation of its terms. Plaintiff asserts that the release cannot bar any fraud claim because it does not specifically reference that type of claim. (Plaintiff's Resp. Memo, p. 8). This is incorrect as a matter of law.

A release does not need to include any specific reference to fraud claims in order to bar such a claim. *Ristau, supra*. *Lindgren v. Berg*, 307 Or. 659, 772 P.2d 1336 (1989), relied on by plaintiff (and decided five years before *Ristau*), is not contrary. In *Lindgren*, the court held that a release, negotiated between the parties' attorneys, which included language referencing claims for fraud, nondisclosure, and misrepresentation barred such claims, including any "fraud in the inducement" claims. *Id.* at 666. The court did not hold that a negotiated agreement between attorneys was *required* for such a bar, nor did it hold that a release had to specifically reference the term "fraud" in order to release such a claim.

The *Ristau* decision instead makes it clear that no specific reference to the term "fraud" is necessary for a release to bar such claims. *Id., supra*, at 389. The plain language of the release signed by plaintiff bars all possible claims, and contains a specific acknowledgment by plaintiff

Page 3 - DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

that he was *not relying* on any representation made by anyone at the City in connection with the release, other than representations contained in the release itself. Under these circumstances, the release bars any fraud claims. *Ristau, supra*.

Plaintiff also argues that because he did not have counsel, any fraud claim is not barred. Plaintiff's failure to consult with counsel is his own, not defendants. Plaintiff states that he was not advised to see an attorney, and that this somehow negates the release. Plaintiff fails to explain how Section 11 of the agreement, which states in capital letters the he "fully understands" his rights to discuss all aspects of the agreement "with whomever" he desires and that he has either "discussed this agreement" or "chosen not to discuss this agreement" did not fully advise him that he could seek the advice of counsel.

Plaintiff admitted that he never asked for time to have the agreement reviewed by counsel (Defendants' Concise Stmt. ¶ 12), and that at the time he signed the release, he understood that it was an agreement not to bring any civil action regarding his employment (Defendants' Concise Stmt. ¶ 12). Plaintiff's failure to seek review of the document by counsel, when he was fully advised that he could do so does not invalidate the release. *Stroman v. West Coast Grocery Company*, 884 F.2d 458, 461-63 (9th Cir. 1989)(release held valid and a bar to plaintiff's Title VII claims even when plaintiff was unrepresented–plaintiff possessed the necessary skills and education to understand that what he signed was a full release of all claims against his employer); *Leavitt v. Northwestern Bell Telephone Company*, 921 F.2d 160, 163 (8th Cir. 1990)(release of all ERISA claim enforceable; the settlement agreement advised plaintiff of right to seek counsel and plaintiff chose to sign without the benefit of such advice).

**B. There Are No Facts Supporting a Claim of Fraud in the Inducement of the Release.**

Fraud which "vitiates a contract is of two kinds: fraud in the inducement and fraud in the execution." *Berry v. Richfield Oil Corporation, et al*, 189 Or. 568, 588, 220 P.2d 106 (1950). As set forth below, releases have been invalidated consistent with this general

Page 4 - DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

proposition under only two circumstances: (1) a party was mislead about what was actually being signed (fraud in the execution); *Whitehead v. Montgomery Ward & Co., Inc.,* 194 Or. 106, 239 P.2d 226 (1951)(release invalid when injured plaintiff was told he was signing a receipt for money paid, when in fact he was signing a full and final release) or (2) a party was deceived about the nature, effect or scope of the release (fraud in the inducement); *Peluck v. Pacific Machine & Blacksmith Co.*, 134 Or. 171, 293 P. 417 (1930)(release deemed invalid when plaintiff who could not read English was told that his signature was needed on the document to get compensation from the state, when in fact it was not); *Kim v. Allstate Insurance Company*, 102 Or. App. 529, 795 P.2d 582 (1990) (plaintiff was advised by insurance adjustor that her automobile accident claim had a maximum value, and that Allstate could not pay her any more than the offered settlement amount for her injuries). Plaintiff does not offer any evidence supporting an inference that he was either mislead about what he was signing, or that he was mislead about the nature, scope or purpose of the agreement. Plaintiff's own testimony is to the contrary.

### i. Fraud in the Execution.

Plaintiff admitted that he was fully aware that he was signing a complete release (Defendants' Concise Stmt. ¶ 12). Plaintiff knew and understood that the release was an agreement not to bring any civil action regarding his employment (Defendants' Concise Stmt. ¶ 12). There is no factual dispute that plaintiff was fully aware of the nature of the document he was signing. There is no basis to invalidate the release for fraud in the execution.

### ii. Fraud in the Inducement.

Plaintiff actually negotiated the terms of the release (Defendants' Concise Stmt. ¶ 11). Specifically, plaintiff changed the release to make it mutual, negotiated payment of his severance, and revised how his medical benefits were granted (Defendants' Concise Stmt. ¶ 11). Plaintiff himself made changes to the draft release after it was sent to him by Kent Taylor, the City Manager (Defendants' Concise Stmt. ¶ 11).

Page 5 - DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

Plaintiff does not claim that any false representations were made to him about the nature, scope, or purpose of the release necessary to support a "fraud in the inducement" claim. *Kim,* 102 Or. App. at 534. Further, plaintiff does not assert that the release was somehow unilaterally coerced or was not the result of arm's length negotiations between the parties-- –plaintiff admitted that he never felt threatened in his dealings with Taylor, was not pressured into signing the release, had time to consider it, and in fact, make his own changes to the release (Defendants' Concise Stmt. ¶¶ 11, 12, 13).

There is nothing about the circumstances surrounding the signing of the release that suggests coercion, unequal bargaining power, or overreaching of the kind found in *Whitehead, Peluck, or Kim*. Plaintiff is undisputably educated, sophisticated in legal matters, to the point of being able to negotiate a *mutual* release, and makes no claim that he was physically or mentally unable to comprehend his actions. As discussed above, plaintiff was aware of his ability to seek the advice of an attorney, and specifically acknowledged this by signing the release. The fact that plaintiff chose not to do so does not invalidate the release. There are no facts supporting any claim of fraud in the inducement. The release is valid and enforceable and bars plaintiff's claims.

**C. The Representation Relied on by Plaintiff Does Not Justify Invalidating the Release**.

Plaintiff argues that the release should be not enforced because he signed it in reliance on "statements made by public officials" (Plaintiff's Resp. Memo, p. 4). Plaintiff fails to explain precisely what false statements were made to him that induced him to sign the release agreement. As defendants can best glean from plaintiff's response memorandum, plaintiff is claiming that he signed the release agreement because he thought the City Council was demanding his resignation and he would be fired if he did not resign (Plaintiff's Resp. Memo, p. 5).

This argument is directly contrary to plaintiff's testimony. Plaintiff admitted that at no time was he told that he had to sign the release or he would be fired (Defendants' Concise Stmt. ¶

Page 6 - DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

13). Plaintiff also admitted that at no time was he told that he had to resign or fired (Defendants' Concise Stmt. ¶ 9). As a matter of law, an argument or affidavit contrary to sworn deposition testimony does not create a question of fact sufficient to defeat summary judgment. *Messick v. Horizon Industries, Inc.*, 62 F.3d 1227, 1231 (9th Cir. 1995); *Bodett v. Coxcom*, 366 F.3d 736, 748 (9th Cir. 2004). Since plaintiff was never told, by his own admission, that he had to sign the release or be fired, he cannot now use that assertion to invalidate the release.

Plaintiff also seems to argue that he signed the release because his due process rights were not disclosed to him, and he was relying on the City Attorney "to insure the agreement was proper." First, plaintiff by his own admission was fully aware of the due process rights of the employees of City–he was responsible for conducting three due process hearings while employed as chief of police (Defendants' Concise Stmt. ¶ 4). Plaintiff admitted that he was familiar with the due process requirements that had to be fulfilled before an employee of the department could be discharged (McFarlin Depo. p. 304, ll. 18-25). He also admitted that he was familiar with the state statutes which provide for due process for police officers (McFarlin Depo. p. 305, ll. 2-6). Plaintiff admitted that at no time did he ever request any due process hearing prior to signing the release (McFarlin Depo. p. 305, ll. 7-12). Plaintiff's *post hoc* claim that he did not know about his rights contradicts his sworn deposition testimony and is insufficient to create a question of fact to defeat summary judgment. *Messick, supra*.

Plaintiff offers no evidence that he ever spoke to the City Attorney about the release, or that she made any statements or representations to him about the terms of the release. Plaintiff fails to explain how this unexpressed assumption somehow creates a question of fact about the enforceability of the release due to some "fraud" by the City Attorney. In the absence of any evidence that the city attorney misrepresented the scope, nature or purpose of the release, thereby supporting a fraudulent inducement claim, plaintiff's reliance on the city attorney is irrelevant and misplaced.

Plaintiff essentially asks the court to invalidate the release not because there was fraud in

Page 7 - DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

the execution or the inducement, but because he now claims that had he known certain facts obtained during discovery related to this lawsuit, he never would have signed the release. The equity of a settlement is judged as of the time that it is made. *Rugemer v. Rhea*, 153 Or. App. 400, 405, 957 P.2d 184 (1998). A release entered into by a person of legal age, and capacity to contract, with a full understanding of the document itself cannot be set aside because a party obtains information later that makes him question the wisdom of the release. *Wheeler v. White Rock Bottling Co. of Oregon*, 229 Or. 360, 367-68, 366 P.2d 527 (1961)(fact that plaintiff settled claims and later learned she was more injured than originally thought not a basis to invalidate release; release was an assumption, in exchange for money, of whatever "risks might lurk" in the settlement of the claim); *Raymond v. Feldmann*, 120 Or. App. 452, 456, 853 P.2d 297 (1993)(despite precipitous actions of claims adjustor in settling personal injury claim, release was enforceable, as plaintiff was an adult, who voluntarily entered into agreement); *Graves v. Tullener*s, 205 Or. App. 267, 279, 134 P.2d 990 (2006)(legal rights learned about after the parties entered into settlement agreement which were not understood at time of agreement were insufficient to invalidate release).

      To the extent plaintiff argues that there was some type of fraud by omission, that theory only applies if there is a "special relationship" between the parties. *Gebrayel v. Transamerica Title Insurance Co.*, 132 Or. App. 271, 281, 888 P.2d 83 (1995)(fraud by omission claims only viable when there is a duty to disclose imposed by some special relationship). As a matter of law, there is no "special relationship" between an employer and employee. *Conway v. Pacific University*, 324 Or. 231, 239-41, 924 P.2d 818 (1996)(relationship between employer and employer is at "arms-length," no special relationship exists because each is acting for their own economic interests). Since none of the alleged "non-disclosures" have anything to do with the nature, scope or purpose of the release, they are irrelevant to the question of its validity; further, any failure to disclose facts does not support a fraud claim in any event.

      Plaintiff is a legally sophisticated, well-educated adult who knowingly and willingly

Page 8 - DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

entered into a full and final release of all claims, the terms of which he himself negotiated. Plaintiff has offered no facts supporting any claim that there was either fraud in the execution or fraud in the inducement of the release. It is valid and enforceable. All of plaintiff's claims are barred because of it, and defendants are entitled to judgment in their favor based on the release alone.

2. **Since Plaintiff Resigned, He Had No Due Process Rights**.

A. **The Procedural Due Process Claim.**

The City does not dispute that an employee who is being terminated has rights to procedural due process. Defendants' argument on summary judgment is that these rights were never due plaintiff, because he resigned from employment. Procedural due process rights do not, as argued by plaintiff, apply to resignations–they only apply to involuntary terminations. *Huskey v. City of San Jose*, 204 F.3d 893, 902 (9th Cir. 2000)(voluntary resignation, in the absence of showing that working conditions were so intolerable and discriminatory as to justify a reasonable person's resignation, relinquishes property interest in employment and due process rights); *Bloodworth v. City of Phoenix*, 26 Fed. Appx. 679, 681 (9th Cir. 2002)(police officer who voluntarily resigned from department, after learning of recommendation for termination, forfeited due process rights).

For purposes of due process claims, resignations are presumed to be voluntary. *Christie v. United States*, 518 F.2d 584, 587-88 (Ct.Cl. 1975)(merely because plaintiff was faced with an unpleasant situation in that her choice was arguably limited to two unpleasant alternatives–resign or be fired–does not obviate the voluntariness of her resignation); *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir. 1988)(no due process violation when police officer voluntarily resigned after a thirty minute meeting during which he was told that if he did not resign he would be indicted; resignation deemed voluntary and due process considerations did not apply). Plaintiff was not discharged from his employment, he voluntarily resigned even though he was not threatened, by his own admission, with discharge. Under these circumstances, plaintiff's due process rights

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

were not violated as a matter of law.

### B. Liberty Interest Claim.

Plaintiff also argues that he had a liberty interest that was violated. A liberty interest is implicated only when an employee is discharged from employment based on some charge that might seriously damage the employee's reputation, and the employer makes a public statement about the charge being the basis for the discharge. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972). In order to prove a prima facie liberty interest case, a plaintiff must show (1) he was discharged from employment based on some charge of dishonesty or similar conduct; (2) the employer made the charge public; (3) the charge is contested; and (4) the public statement was made about the employee's discharge and the related charge. *Llamas v. Butte Community College District,* 238 F.3d 1123, 1129 (9th Cir. 2001)*; Ulrich v. City and County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002).

Plaintiff was not discharged; he resigned. Plaintiff offers no evidence of any statement to the public by defendants about his resignation, much less that he was discharged due to dishonesty. Plaintiff has offered no evidence of a public disclosure of a stigmatizing statement related to a discharge from employment. As a matter of law, he has no liberty interest claim. *Siegert v. Gilley*, 500 U.S. 226, 243-35, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991)(employee who resigned from employment had no liberty interest claim, even after defendant employer released potentially defamatory statement about resignation after it was tendered).

### C. The Monell Claim.

To the extent plaintiff attempts to allege a "*Monell*" claim against the City for a violation of his due process rights, such a claim fails for the additional reason that there is no evidence that the City had a policy of depriving employees of their procedural due process rights, evidence which is necessary to maintain a claim against the City, as opposed to an individual public official. *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). In response to defendants' motion, plaintiff spends considerable time discussing Gormley's actions. Plaintiff

Page 10 - DEFENDANTS GORMLEY AND CITY OF
MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

fails to point to any City policy, or practice supporting a denial of due process claim. The City is therefore entitled to judgment in its favor not only because the claims fail on their merits, as set forth above, but because plaintiff has not offered evidence of a city-wide policy or practice.

    3.    **Gormley is Entitled to Qualified Immunity**.

The only constitutional right that plaintiff had related to his employment was a procedural due process right, if he was going to be terminated. This right existed solely because the employer's policies provide for due process. *Brady v. Gebbie*, 859 F.2d 1543, 1548 (9th Cir. 1988)(employee only has a constitutionally protected property interest in his job if under state law, he has an expectation of continued employment). Qualified immunity shields government officials from liability for civil damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Somers v. Thurman*, 109 F.3d 614, 616-17 (9th Cir. 1997).

The sole issue regarding qualified immunity is whether Gormley deprived plaintiff of due process rights. In response to defendants' motion, plaintiff does not explain why, in the face of his resignation, and negotiation of a full and final release, Gormley would have believed that plaintiff was entitled to due process. Further, plaintiff was fully aware of his due process rights, and at no time made any request for hearing. Since plaintiff resigned, Gormley is entitled to qualified immunity. *Alvarado, supra* at 453.

    4.    **The Fraudulent Misrepresentation Claim**.

Plaintiff claims that his resignation was obtained by fraud. Under the misrepresentation theory, a court may find a resignation involuntary if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation. *Hargray v. City of Hallandale*, 57 F.3d 1560, 1570 (11th Cir. 1995). A representation is "material" if it concerns an alternative to resignation, such as the possibility of criminal prosecution. *Id.* The court applies an objective standard, and does not inquire into the "subjective perceptions of the employee" nor the "subjective intent of the employer." *Id.*

Page 11 -DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

Plaintiff asserts throughout his response that he was duped into resigning because he thought he would be terminated. However, plaintiff admits that he was never told that if he did not resign, he would be terminated (Defendants' Concise Stmt. ¶ 8). Plaintiff admits that his conclusion that the council wanted him to resign was entirely his own assumption, and he did nothing to confirm this assumption (Defendants' Concise Stmt. ¶ ¶ 9, 14). Plaintiff's subjective perceptions about what he was being told are insufficient to create a question of fact about whether his resignation was obtained by "misrepresentation." *Id.*

Further, plaintiff's reliance must be reasonable. *Id.* Plaintiff conclusorily argues that he had a right to rely on statements by Gormley. However, as set forth in defendants' motion, "if a party is equally qualified to judge the merits of a proposition, then reliance on a misstatement as a matter of law is unjustified." *Oregon Public Employees Retirement Board v. Simat, Hellicsen & Eichner*, 191 Or. App. 408, 428, 83 P.3d 350 (2004). Plaintiff fails to offer any facts supporting any claim that he was not capable of determining whether his subjective conclusions about what the city council wanted were actually true. Plaintiff has not shown that his purported "reliance" was reasonable. Defendants are entitled to summary judgment on the fraud claim on its merits.

**5.   The Intentional Interference Claim Against Gormley**.

In order for defendant Gormley to be a "third party" for purposes of an intentional interference claim, there must be evidence that he was acting *solely* on behalf of himself at the time he met with plaintiff. *Sims v. Software Solutions Unlimited, Inc.*, 148 Or. App. 358, 364-65, 939 P.2d 654 (1997). If an employee is acting in any part on behalf of the employer, he is not a third party to the employment contract. *Id.* There is no question of fact that Gormley was acting as mayor when he met with plaintiff. Plaintiff's only argument regarding the scope of Gormley's actions are that a jury could disbelieve his testimony regarding this. As a matter of law, challenging a witnesses' credibility is insufficient to create a question of fact in response to a summary judgment motion. *Bodett v. Coxcom*, 366 F.3d 736, 740 fn. 3 (9th Cir. 2004).

Page 12 -DEFENDANTS GORMLEY AND CITY OF
    MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
    FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

Further, even if there was some evidence that Gormley was in part acting on his own behalf, this is insufficient, as a matter of law, to establish him as a third party for purposes of an intentional interference claim. *Sims, supra.*[1]

Plaintiff misconstrues the correct legal test by arguing that there is evidence that Gormley had his own motivations. That is not the point. The question is whether Gormley was acting only on his own behalf, and the undisputed evidence is that he was not. For this reason, he is entitled to summary judgment on the intentional interference claim.

**6.  The Conspiracy Claims**.

Plaintiff apparently recognizes that there is no separate tort of "conspiracy" (Plaintiff's Response Memo. p. 21). Despite this, he argues that there are facts supporting a claim of conspiracy, primarily focusing on his subjective assertions about the "intent" of the alleged conspirators to wrongfully and fraudulently obtain his resignation (Plaintiff's Resp. Memo. p. 21). As a matter of law, this does not support a claim of conspiracy. Plaintiff cites to no statute making a request for a resignation an illegal act. As the court stated in *Bliss v. Southern Pacific Company*, 212 Or. 634, 646-47, 321 P.2d 324 (1958) in discussing the "conspiracy" theory: "Bad motive by itself is no tort. Malicious motives make a bad act worse, but they cannot make that a wrong which in its own essence is lawful. An act which does not amount to a legal injury cannot be actionable just because it is done with a bad intent."

The act of which plaintiff complains is the request for his resignation. That act, in and of itself is not unlawful, irrespective of plaintiff's conclusions. There is no case law or statute cited by plaintiff holding that an employer's request for an employee's resignation is unlawful. Therefore, plaintiff's allegations about the City, or Gormley's "bad intent" as a basis for his conspiracy claim is, as a matter of law, irrelevant. In the absence of an underlying unlawful act, there is "no foundation upon which a charge of conspiracy can rest." *Bliss*, *supra* at 331. For

---

[1] This same analysis applies to plaintiff's claim that Gormley is not subject to dismissal under the Oregon Tort Claims Act.

Page 13 - DEFENDANTS GORMLEY AND CITY OF
MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

this reason, in addition to those set forth in defendants' motion, they are entitled to summary judgment on plaintiff's conspiracy claims.

	7.	**The Common Law Wrongful Discharge and Negligence Claims**.

Plaintiff fundamentally misunderstands defendants arguments regarding these two claims. Plaintiff offers no evidence that he fulfilled some important societal obligation or exercised any employment related right which in turn, led to the request for his resignation. As a matter of law, plaintiff has no common law wrongful discharge claim.

With respect to the negligence claim, plaintiff cites cases setting forth the general elements of a negligence claim, but offers no explanation as to why his claim is not controlled by *Conway v. Pacific University*, 324 Or. 231, 924 P.2d 818 (1996), which established that there is no special relationship giving rise to a negligence action between an employer and an employee for purposes of termination of employment. The City is entitled to summary judgment on both those claims.

	8.	**The Wage and Hour Claim and Breach of Contract Claim**.

The wage and hour laws provide penalties if an employer does not pay wages due and owing within certain time frames. ORS 652.150, *et. seq*. Plaintiff is no longer employed by the City. Any recovery he might receive as a result of his claims are not "wages due and owing" under the statute, they would be economic or non-economic damages, which are not covered by the wage and hour laws. Plaintiff has no wage and hour claim.

Plaintiff's complaint alleged breach of contract is based on failure to pay wages (First Amended Compl. ¶ 45). As set forth above, and in defendants' motion, plaintiff has no wage and hour claim, so he has no breach of contract claim for failure to pay wages. In response to defendants' motion, plaintiff now appears to argue that the resignation agreement was somehow breached, but there is no issue that plaintiff received all consideration due under that agreement, so there is no question of fact about that "contract" either.

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

### 9. The Defamation Claims.

Plaintiff argues that there is evidence of "special damages" suffered by plaintiff as a result of defamatory statements because of his loss of employment (Plaintiff's Resp. Memo. p. 24). Plaintiff offers no evidence that any request for a resignation was made because of any defamatory statements by either Gormley or anyone else at the City. This assertion is unsupported by any evidence in the record.

Plaintiff also asserts that there is evidence in the record that Gormley's statements "deterred Springer from acting to protect McFarlin's interests (Plaintiff's Resp. Memo. p. 24). Plaintiff fails to explain to what evidence he is referring. The only evidence is that Springer did not believe the statements allegedly made by Gormley (Defendants' Concise Stmt. ¶ 19). Plaintiff offers no evidence from Springer that he failed to act on McFarlin's behalf because of statements by Gormley. Plaintiff has not established any question of fact about "special damages" in support of his defamation claim.

In response to defendants' claim of absolute privilege, plaintiff asserts that there is evidence that Gormley was not acting as a public official when he spoke with Springer. Again, plaintiff fails to point to any evidence in the record supporting this claim.

Plaintiff argues that a jury could disbelieve Gormley about the fact that he was at all times acting as the mayor (Plaintiff's Resp. Memo. p. 24). As a matter of law, this is insufficient to create a question of fact in response to summary judgment. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Bodett v. Coxcom*, 366 F.3d 736, 740, fn. 3 (9th Cir. 2004)(a party cannot create a question of fact by simply challenging the credibility of a witness). Gormley testified that he was acting only in his capacity as the mayor in his dealings with plaintiff (Defendants' Concise Stmt. ¶ 17). Plaintiff has offered no contrary evidence.

Plaintiff has offered no evidence that at the time Gormley met with Springer and made the alleged defamatory statements, Gormley was acting as a private individual and not the mayor.

Page 15 - DEFENDANTS GORMLEY AND CITY OF
MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

A discussion between the mayor of a city, and council member of that city about the chief of police is well within the authority of the mayor and is therefore subject to an absolute privilege, even assuming the statements were made. *Shearer v. Lambert*, 274 Or. 449, 452, 547 P.2d 98 (1976)(underlying the rule of absolute privilege is the assumption that to permit suits against public officers would inhibit independent official action, and the assumption that the public interest served outweighs the interest of persons damaged by the willful and malicious conduct of public officers); *Sandrock v. City of Corvallis*, 58 Or. App. 312, 314, 648 P.2d 382, *rev. den*. 293 Or. 634, 652 P.2d 810 (1982)(false statement by police captain to detectives in a briefing meeting that plaintiff, the wife of the Benton County District Attorney, had been caught shoplifting but not arrested was subject to absolute privilege). Even if it is assumed that the statements were made, and were false, they were subject to an absolute privilege, and defendants are entitled to summary judgment on the defamation claims.

The statements would also be subject to a conditional privilege, as set forth in defendants' motion at page 26. Plaintiff makes no arguments, and offers no facts, controverting the claim of conditional privilege. Defendants are entitled to summary judgment on the defamation claim for this reason as well.

## CONCLUSION

For all of the above reasons, and the reasons set forth in defendants' motions, they are entitled to judgment in their favor on all of plaintiff's claims.

DATED this 30th day of November 2007.

HOFFMAN, HART & WAGNER, LLP

By: */s/ Karen O'Kasey*
　　Karen O'Kasey, OSB No. 87069
　　Of Attorneys for Defendants Gormley
　　and City of McMinnville

Page 16 - DEFENDANTS GORMLEY AND CITY OF
　　MCMINNVILLE'S REPLY IN SUPPORT OF MOTION
　　FOR SUMMARY JUDGMENT

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499

CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November, 2007, I served the foregoing DEFENDANTS GORMLEY AND CITY OF MCMINNVILLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT on the following parties at the following addresses:

> Terrence Kay, P.C.
> Attorney at Law
> 3155 River Road S., Suite 150
> Salem, OR 97302
>
> Robert S. Wagner
> Miller & Wagner LLP
> 2210 NW Flanders St.
> Portland, OR 97210
>
> Walter H. Sweek
> Cosgrave Vergeer Kester LLP
> 805 SW Broadway, 8th Floor
> Portland, OR 97205

by electronic means through the Court's Case Management/Electronic Case File system.

      /s/ Karen O'Kasey
      Karen O'Kasey

Page 1 -   CERTIFICATE OF SERVICE

HOFFMAN, HART & WAGNER LLP
Attorneys at Law
Twentieth Floor
1000 S.W. Broadway
Portland, Oregon 97205
Telephone (503) 222-4499