Robert S. Wagner, OSB #84411
Stan LeGore, OSB #94369
MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, OR 97210-3408
Telephone: (503) 299-6116
Facsimile: (503) 299-6106
E-mail: rsw@miller-wagner.com

    Of Attorneys for Defendants City County Insurance Services Trust,
    Rod Brown, and Public Safety Liability Management Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WAYNE McFARLIN,<br><br>    Plaintiff,<br><br>v.<br><br>EDWARD GORMLEY, an individual; CITY OF McMINNVILLE, a Municipal Corporation; CITY COUNTY INSURANCE SERVICES TRUST; ROD BROWN, an individual; PUBLIC SAFETY LIABILITY MANAGEMENT INC., an Oregon corporation; WALDO FARNHAM,<br><br>    Defendants. | Case No. CV06-1594 HU<br><br>REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT |

    Plaintiff's Response to the CCIS defendants' motion for summary judgment is, at best, disjointed and confusing. After navigating the maze of plaintiff's exhibit numbering and incorporations by reference, it remains clear that all of plaintiff's claims are without merit. Further, all of plaintiff's claims fail for two separate and independent reasons. First, plaintiff failed to provide timely tort claim notice to CCIS as required by statute. Second, plaintiff has waived all his claims.

///

Page 1 -   REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

## TORT CLAIM NOTICE AND WAIVER DEFENSES

These are two complete defenses to all of plaintiff's claims against the CCIS defendants. Either is sufficient, independent of the other, to support granting these defendants' motion for summary judgment.

### 1. Plaintiff Failed to Give Timely Tort Claim Notice to CCIS.

Under Oregon law, plaintiff is required to give tort claim notice within 180 days of having knowledge which would reasonably alert him to the possible existence of his claim. ORS 30.275(2)(b). A plaintiff "need not have actual knowledge of tortious conduct before the statute of limitations will begin to run," Gaston v. Parsons, 318 Or. 247, 256 (1994), and the requisite knowledge for tort claim notice is less than the knowledge required for a plaintiff's claim to accrue for purposes of the statute of limitations. Gaston, 318 Or. at 255-56 ("To be sure, the fact that a plaintiff has sufficient information to give a tort claim notice will usually mean that he or she also has sufficient information to say that his or her cause of action has accrued."). The "statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements (harm, causation, and tortious conduct) exists." Gaston, 318 Or. at 256. Relevant to "this analysis will be a plaintiff's failure to make a further inquiry if a reasonable person would have done so." Uruo v. Clackamas County, 166 Or.App. 133, 143 (2000)(internal citation omitted).

In the present case, plaintiff testified that he knew about the issue of the Police Association "no confidence" vote as early as October 24, 2005, when he met with defendant Gormley and other City officials. Plaintiff testified as follows:

> Q. When did you first hear the police association in McMinnville was considering a vote of no confidence against yourself?

Page 2 -   REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS
CITY COUNTY INSURANCE SERVICES TRUST, ROD
BROWN, AND PUBLIC SAFETY LIABILITY
MANAGEMENT, INC.'S MOTION FOR SUMMARY
JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

> MR. KAY: Object to the form. Assumes facts not in evidence. You can answer it if you can.
>
> THE WITNESS: Mayor Gormley told me when he ordered my resignation.

BY MR. WAGNER:

> Q. When did he, quote, order, close quote, your resignation?
>
> A. I believe the date was October 24th, 2005. That's the meeting when he and Rick Olson and Kent Taylor directed me to leave.

(Exhibit 6)[1].

Further, at that same meeting, plaintiff learned that his own understanding about Police Association support for his performance as Chief was completely different from the negative report that Gormley was giving him. (Exhibit 5). Therefore, plaintiff was on notice that he needed to investigate further because there was – at the very least – some fundamental misunderstanding between plaintiff and Gormley.[2]

Finally, the following testimony from plaintiff proves that he had all the information linking Brown to the alleged fraud and conspiracy concerning the "no confidence" vote in November, 2005:

> Q. When was the first time you learned that Mr. Brown had been communicating with city officials about your chiefdom prior to your

---

[1] Exhibit numbers refer to exhibits offered by the CCIS defendants unless otherwise specified. Exhibits 1 through 3 are attached to the Affidavit of Stan LeGore in Support of [the CCIS defendants'] Motion for Summary Judgment. Exhibits 4 through 6 are attached to the Second Affidavit of Stan LeGore in Support of [the CCIS defendants'] Motion for Summary Judgment.

[2] In fact, plaintiff's testimony indicates that he did not believe Gormley's report about the "no confidence" vote, which demonstrates that plaintiff could not have been defrauded by that representation if it had been false. (Ex. 5). Of course, Gormley was telling the truth, which demonstrates how inept and out of touch plaintiff was in his role as Chief of Police. (Ex. 3, pp. 6-7, 9, 20, 21).

Page 3 - REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

resignation?

A. Prior to my resignation?

Q. Yeah.

A. I didn't know he was involved at all.

Q. So when was the first time you learned?

A. I had heard he went to a union meeting to try to talk them into a vote of no confidence.

Q. When did you hear that and from whom?

A. It was, to my best recollection, it was sometime in the month of November.

Q. Of '05?

A. Yes.

* * * * *

Q. When you first learned about November of 2005 that Rod Brown had gone to a police union meeting where the subject of a no-confidence vote regarding you as chief had come up, did you assume at that point that Brown went to the meeting in his capacity as a CCIS employee or contractor?

A. That's what he is.

Q. So that's what you assumed.

A. And he's also a close friend of the mayor and I assumed he was there in that role. He is all those things to those people.

Q. Okay. So you assumed he was there in his role as CCIS functionary, at least in part, yes?

A. Yes.

Q. And it was your belief that that was an inappropriate thing for him to have

Page 4 - REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

done?

A. Absolutely.

Q. And that, is that one of the things you're suing him for in this case?

A. Yes.

(Exhibit 2, pp. 9-10).

Plaintiff's own testimony confirms that he knew in November, 2005, of CCIS' involvement in the conduct on which he bases this lawsuit.[3] Therefore, plaintiff had the necessary information to trigger the statutory tort claim notice requirement no later than November, 2005, and was required to give tort claim notice to CCIS no later than the end of May, 2006. Plaintiff admits that the earliest he gave tort claim notice to CCIS was October 19, 2006. Plaintiff's claims against all CCIS defendants fail.

In an attempt to rescue all his claims against CCIS, Brown and PSLM, plaintiff has submitted a "sham" affidavit offering an unsubstantiated and generalized legal conclusion that he did not discover Brown's possible involvement in the conduct giving rise to his lawsuit until sometime after April 19, 2006. Plaintiff's affidavit must be rejected.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Foster v. Arcata Associates, 772

---

[3] Plaintiff actually testified that he knew Brown was a CCIS agent/employee as early as 2000. Plaintiff met with Brown in that capacity early in plaintiff's tenure as Chief, and that plaintiff had Brown do some consulting for him in Brown's capacity as an agent/employee for CCIS. (Ex. 2, page 2, line 10 through page 3, line 7).

Page 5 - REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

F.2d 1453, 1462 (9th Cir.1985), cert. denied, 475 U.S. 1048, 106 S.Ct. 1267, 89 L.Ed.2d 576 (1986).

In his "sham" affidavit, plaintiff offers a very general and vague assertion that he did not learn of Brown's involvement until he received some information during discovery. He does not explain what that information was, which obviously prevents the court from deciding how the alleged new information added anything of legal significance to the knowledge plaintiff had in November, 2005. The CCIS defendants have moved to strike plaintiff's "sham" affidavit. The court should grant that motion and dismiss all claims against defendant CCIS. Further, the court should also dismiss all claims against defendants Brown and PSLM because, under the ORS 30.265(1), CCIS must be substituted in place of defendants Brown and PSLM.[4]

## 2. Plaintiff Waived All Claims.

Plaintiff negotiated and signed a complete release of all his claims as part of his resignation and accompanying compensation package with the City of McMinnville. Defendants Gormley and the City have briefed this issue, and the CCIS defendants joined in and adopted that portion of the City's memorandum and supporting documents because plaintiff's waiver includes the claims against the CCIS defendants.

Plaintiff has responded with ten pages of general legal principles without offering any evidence of how those principles apply in the present case. There are two glaring instances where the evidence clearly does not support plaintiff, and plaintiff has offered

---

[4]Plaintiff has argued that part of Brown's involvement was as a private citizen because he did not bill CCIS for his work of conducting the preliminary search for an interim Chief. However, plaintiff has alleged that Brown was at all times a CCIS employee or agent, and it is not unusual for a business - for a variety of purely business reasons - to not bill for certain work. Plaintiff "cannot amend [his] complaint through argument in a brief opposing summary judgment." Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004). Further, the task of searching for an interim Chief clearly falls within Brown's agency with CCIS, regardless of Brown's choice not to bill for that service.

Page 6 - REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

nothing to overcome the consequences of that undisputed evidence.

First, with respect to any fraud or misrepresentation connected with Gormley's statements about the Police Association "no confidence" vote, plaintiff testified that he was surprised by Gormley's information because plaintiff's own knowledge contradicted Gormley's perception of the situation. (Exhibit 5). Therefore, plaintiff was on notice as to a discrepancy in perceptions and was not misled. He easily could have investigated further.[5]

Second, with respect to any alleged fraud or concealment of citizen complaints that violated plaintiff's Due Process rights guaranteed by the employee Handbook, plaintiff was the Chief of Police and presumably completely familiar with all the rights of employees and all City procedures. The plain language of the Handbook does not provide the guarantees to which plaintiff now claims entitlement because those guarantees attach only for suspension without pay, reduction in pay, demotion or termination. (Plaintiff's exhibit 15, page 8). Plaintiff, as a Chief of Police, should understand the difference between those adverse employment actions and his negotiated resignation. Even if the resignation was negotiated to avoid termination, there is still a distinct procedural difference.[6]

Plaintiff was in a tough spot. He knew that the local newspaper was going to publish an article critical of his tenure as Chief. He also knew (despite his face-saving denials) that the police association was sick of him and was going to pass a "no

---

[5] The problem with any of this, of course, is that the Police Association was going to make the "no confidence" vote if plaintiff remained Chief. Therefore, Gormley did not misrepresent anything.

[6] If, in fact, plaintiff does not understand this distinction, and if, in fact, plaintiff was not savvy enough to follow up on the obvious discrepancies between his perception of police department labor relations and Gormley's report about the "no confidence" vote, then plaintiff was not competent - as a matter of law - to be the Chief of Police for the City of Salem.

Page 7 -    REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

confidence" vote in the near future. Either of those events would have effectively scuttled any chance he had for the City of Salem Police Chief position. Plaintiff made a rational choice in an attempt to conceal his incompetence from the City of Salem. Because none of plaintiff's options were ideal - a direct consequence of his own shortcomings as Chief of Police - he has now decided that he made the wrong choice and wants the equivalent of a "mulligan." Plaintiff was not the victim of any fraud, misrepresentation, or coercion, and the court should grant all motions for summary judgment based on plaintiff's waiver of all claims.

## EACH OF PLAINTIFF'S INDIVIDUAL CLAIMS FAILS FOR INDEPENDENT REASONS

As a preliminary matter, the form of plaintiff's response has provided an additional reason to grant the CCIS defendants' motion for summary judgment. The court should note that plaintiff did not respond to any of the issues of evidentiary insufficiency raised by the CCIS defendants' motion for summary judgment with respect to any of plaintiff's individual claims. Instead, plaintiff has constructed an elaborate series of misdirections which lead nowhere.

First, plaintiff promises that his evidentiary and factual support are contained in other documents with the general statement that he relies on the "section on Material Facts" of his response to the City's motion, and also on all the other documents filed by plaintiff. (See Plaintiff's Memorandum Opposing [the CCIS defendants'] Motion for Summary Judgment, page 2).

Unfortunately, the "Material Facts" section of plaintiff's Response to the City's motion states only the following recitation of facts:

> Plaintiff relies on his Concise Statement of Material Facts, and his Affidavit, the Declarations, and the incorporated exhibits and deposition excerpts therein.

(Plaintiff's Response to [the City's] Motion for Summary Judgment, page 2). Therefore,

Page 8 -   REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS
           CITY COUNTY INSURANCE SERVICES TRUST, ROD
           BROWN, AND PUBLIC SAFETY LIABILITY
           MANAGEMENT, INC.'S MOTION FOR SUMMARY
           JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

plaintiff has completely failed to identify any evidence that could even theoretically demonstrate a genuine issue of material fact.

Pursuant to Fed.R.Civ.P. 56(e), an adverse party's response to a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Thus, the opposing party must direct the court's attention to specific, triable facts. A generalized reference to matters "set forth in plaintiff's deposition," for example, does not satisfy the rule. Nissho-Iwai American Corporation v. Kline, 845 F.2d 1300, 1307 (5th Cir. 1988); Carmen v. San Francisco Unified School District, 237 F.3d 1026, 1031 (9th Cir. 2001). Further, the court is not obligated to consider matters not specifically brought to its attention, and need not search the record for evidence that might support plaintiff's argument. Carmen, 237 F.3d at 1029; Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2nd Cir. 2002). The court should grant the CCIS defendants' motion for summary judgment based on plaintiff's failure to identify any evidence in response to defendants' arguments against plaintiff's individual claims.

Plaintiff does not do much better in offering any legal analysis of the issues raised by the CCIS defendants. He promises that his legal analysis is included in his memorandum in response to the City's motion for summary judgment. (See Plaintiff's Memorandum Opposing [the CCIS defendants'] Motion for Summary Judgment, pp. 3-4). Again, plaintiff's memo in response to the City does not contain any responses to the issues raised by the CCIS defendants with respect to the merits of plaintiff's claims.

**1.    Plaintiff's Interference with Contract (Fifth Claim for Relief) Fails.**

A search of plaintiff's Memorandum in Response to the City's Motion for Summary Judgment reveals that plaintiff fails to respond at all to the lack of evidence to support this claim. Plaintiff does not refute Brown's arguments because he has no evidence to refute those arguments. Clearly the actions by Brown which plaintiff claims "interfered

Page 9 -   REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

with" his employment contract did not cause any such interference and were not wrongful in any way. Further, plaintiff has no evidence that Brown had the requisite intent to support this claim. This claim fails completely.

2. <u>Interference with Prospective Business Relations (Sixth Claim for Relief) Fails</u>.

Defendants cannot find that plaintiff made any response to Brown's motion on this claim. A complete failure to respond indicates plaintiff's complete lack of evidence. Further, plaintiff has admitted that defendant Brown had absolutely no contact or communication with the City of Salem during the relevant time period. (<u>See</u> Plaintiff's Response to Concise Statement, document #60, paragraph 11). There is simply no basis for plaintiff's claim.

3. <u>Conspiracy Claims (Ninth, Tenth, and Eleventh Claims for Relief) Fail</u>.

As plaintiff admits, Oregon law does not recognize conspiracy as a separate claim for relief. "The damage in a civil conspiracy flows from the overt acts and not from the conspiracy." <u>Bonds v. Landers</u>, 279 Or. 169, 175 (1977). In the present case, plaintiff offers only generalities without identifying any "unlawful overt acts" by Brown. <u>Id.</u> at 174. Brown did not commit any unlawful overt acts and plaintiff has no evidence to support any contention that Brown did so. Even if plaintiff could state a claim for conspiracy, which he cannot as a matter of law, he has not offered any evidence to support the claim.

4. <u>Negligence Claim (Thirteenth Claim for Relief) Fails</u>.

Again, plaintiff has not responded to the CCIS defendants' motion. Plaintiff's negligence claim fails for the reasons set out in defendants Gormley and the City's Memorandum, pp. 22-23. Plaintiff's negligence claim also fails to the extent it is based on any of Brown's alleged intentional conduct. Intentional conduct cannot support a claim for negligence. <u>Hampton Tree Farms, Inc. v. Jewett</u>, 158 Or.App. 376 (1999).

            CITY COUNTY INSURANCE SERVICES TRUST, ROD
            BROWN, AND PUBLIC SAFETY LIABILITY
            MANAGEMENT, INC.'S MOTION FOR SUMMARY
            JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

Plaintiff has not addressed or refuted this issue.

Plaintiff did set out the elements of a negligence claim, but doing so only demonstrates more completely that Brown had no duty to report to plaintiff under any circumstances. Plaintiff would not be in the class of persons for whom Brown's actions - failure to inform plaintiff about the search for an interim Chief or failure to inform plaintiff that Waldo Farnham was probably complaining to the City about plaintiff - could constitute negligence. Brown's duty was to CCIS and the City, not to plaintiff.

Finally, plaintiff did not respond at all to the lack of evidence for any negligent supervision claim against CCIS. In order to prove liability, plaintiff is required to present some evidence that it was reasonably foreseeable to CCIS that its agent would cause the kind of harm that plaintiff has alleged in this case. See Erickson v. Christenson, 99 Or.App. 104, 109 (1989). Plaintiff has no such evidence. Further, Brown's extensive experience and past work for CCIS provides overwhelming evidence that CCIS could not reasonably have foreseen that Brown would injure plaintiff in the manner alleged. (Ex. 1, pp. 2-4). Plaintiff's claim against CCIS has no merit.

5.  **Defamation Claim (Fourteenth Claim for Relief) Fails.**

Plaintiff's response does not address this claim in any way. He continues to allege that defendant Gormley defamed him, but offers no evidence of defamation by any CCIS defendant. Further, plaintiff acknowledged in his deposition that he has absolutely no information or evidence that Brown said anything defamatory about him. (Exhibit 2, p. 8, lines 17 - 19). Therefore, the defamation claim against Brown and PSLM fails for a complete lack of evidence. In fact, this claim is completely frivolous.

6.  **Declaratory Judgment Claim (Fifteenth Claim for Relief) Fails.**

Plaintiff makes no attempt to support this claim, which is frivolous and must be dismissed.

Page 11 -   REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3406
(503) 299-6116

## CONCLUSION

There are several reasons the court should grant the CCIS defendants' motion for summary judgment, each of which is independently sufficient to support that ruling. First, plaintiff failed to give the necessary tort claim notice. Second, plaintiff has waived all his claims.

Third, with respect to each individual claim, plaintiff has completely failed to "set forth specific facts showing that there is a genuine issue for trial," as required by Fed.R.Civ.P. 56(e). What little evidentiary support plaintiff does muster does not even rise to the level of a "mere scintilla" and is not significantly probative, and is thus is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 252 (1986); United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir.), cert denied, 493 U.S. 809 (1989). Where, as here, "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 587 (1986).

The court should grant the CCIS defendants' motion for summary judgment.

DATED this 30th day of November, 2007.

MILLER & WAGNER LLP

By: _____
Stan LeGore, OSB #94369
Of Attorneys for Defendants
City County Insurance Services Trust,
Rod Brown, and Public Safety Liability
Management, Inc.
503-299-6116

Trial Attorney:
Robert S. Wagner, OSB #84411

Page 12 - REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS CITY COUNTY INSURANCE SERVICES TRUST, ROD BROWN, AND PUBLIC SAFETY LIABILITY MANAGEMENT, INC.'S MOTION FOR SUMMARY JUDGMENT, on the following parties at the following addresses by notice of electronic filing using the CM/ECF system:

>   Terrence Kay
>   Attorney at Law
>   3155 River Road S., Suite 150
>   Salem, OR 97302
>   503-588-1944
>   terrence@kaylawfirm.com
>       Of Attorneys for Plaintiff
>
>   Karen O'Kasey
>   Hoffman, Hart & Wagner
>   Attorneys at Law
>   1000 S.W. Broadway, 20th Floor
>   Portland, OR 97205
>   503-222-4499
>   kok@hhw.com
>       Of Attorneys for Defendants Gormley and City of McMinnville
>
>   Walter H. Sweek
>   Cosgrave Vergeer Kester LLP
>   Attorneys at Law
>   805 S.W. Broadway, 8th Floor
>   Portland, OR 97205
>   503-323-9000
>   wsweek@cvk-law.com
>       Of Attorneys for Defendant Farnham

DATED this 30th day of November, 2007.

_____
Stan LeGore, OSB #94369

Page 1 -    CERTIFICATE OF SERVICE

MILLER & WAGNER LLP
Trial Lawyers
2210 N.W. Flanders Street
Portland, Oregon 97210-3408
(503) 299-6116